No. 13-1969

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

DISCOVERY COMMUNICATIONS, LLC,
*Plaintiff-Appellant*,

v.

COMPUTER SCIENCES CORPORATION,
*Defendant-Appellee.*

_____

**On Appeal from the United States District Court
for District of Maryland, at Greenbelt,
Case No. 8:12-cv-02894-DKC
Deborah K. Chasanow, District Judge**

_____

**RESPONSE BRIEF OF APPELLEE
COMPUTER SCIENCES CORPORATION**

_____

M. Carter DeLorme
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Telephone:  (202) 879-4643
Facsimile:   (202) 626-1700
cdelorme@jonesday.com

*Counsel for Defendant-Appellee*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __13-1969__          Caption: __Discovery Communications, LLC, v. Computer Sciences Corporation__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Computer Sciences Corporation__
(name of party/amicus)

who is _____ appellee _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.   Is party/amicus a publicly held corporation or other publicly held entity?  ☑YES ☐NO

2.   Does party/amicus have any parent corporations?                    ☐YES ☑NO
     If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.   Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                    ☐YES ☑NO
     If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?      ☐YES ☑NO
If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)      ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?      ☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ M. Carter DeLorme                    Date:      11/18/2013

Counsel for: Computer Sciences Corporation

## CERTIFICATE OF SERVICE
****************************

I certify that on _____11/18/2013_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/s/ M. Carter DeLorme                              11/18/2013
(signature)                                        (date)

# TABLE OF CONTENTS

**Page**

JURISDICTIONAL STATEMENT ...........................................................1

STATEMENT OF ISSUES .....................................................................1

STATEMENT OF THE CASE .................................................................1

STATEMENT OF FACTS ........................................................................2

    I.     The Employment Agreement Between Mr. Colan and
Discovery ...................................................................................2

    II.    August 17, 2012 – August 23, 2012 ...........................................4

    III.   August 24, 2012 – August 30, 2012 ...........................................5

    IV.   August 31, 2012 .........................................................................5

SUMMARY OF THE ARGUMENT ........................................................6

ARGUMENT ...........................................................................................7

    I.     Standard of Review ....................................................................7

    II.    The District Court Properly Determined That Discovery Failed
To State a Claim for Tortious Interference Under Maryland
Law ...........................................................................................8

         A.    Discovery Did Not Plead Facts Showing That a Valid
Contract Existed When Mr. Colan Began Working at
CSC ...............................................................................8

         B.    Discovery Did Not Plead Facts Showing That CSC Had
Knowledge of Mr. Colan's Contract When It Offered
Him a Job .....................................................................13

         C.    Discovery Did Not Plead Facts Supporting Its Theory
That CSC Interfered with the Employment Agreement
After Receiving Notice, and Before the Agreement's
Termination ..................................................................17

    III.   The District Court Did Not Abuse Its Discretion By Declining
To Invite Discovery To Amend Its Complaint ..........................19

CONCLUSION ......................................................................................21

REQUEST FOR ORAL ARGUMENT ...................................................21

CERTIFICATE OF COMPLIANCE.......................................................22

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<span style="font-variant: small-caps;">CASES</span>

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................................................................14, 15, 16, 17

*Aziz v. Alcolac, Inc.*,
658 F.3d 388 (4th Cir. 2011) ...............................................................18

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...............................................................14, 15, 17

*CompuSpa, Inc. v. IBM Corp.*,
228 F. Supp. 2d 613 (D. Md. 2002)......................................................14

*Cozzarelli v. Inspire Pharm. Inc.*,
549 F.3d 618 (4th Cir. 2008) ...............................................................19

*Domino Sugar Corp. v. Sugar Workers Local Union 392, UFCW*,
10 F.3d 1064 (4th Cir. 1993) ..........................................................19, 20

*Fowler v. Printers II, Inc.*,
598 A.2d 794 (Md. Ct. Spec. App. 1991)...............................................11

*Gerner v. Cnty. of Chesterfield, Va.*,
674 F.3d 264 (4th Cir. 2012) ...............................................................21

*Hishon v. King & Spalding*,
467 U.S. 69 (1984)................................................................................2

*Iodice v. United States*,
289 F.3d 270 (4th Cir. 2002) ...............................................................16

*Magic Valley Truck Brokers, Inc. v. Meyer*,
982 P.2d 945 (Idaho 1999) .............................................................11, 12

*Oates v. Trs. of Gaston Coll.*,
No. 3:12-CV-853-RJC-DCK, 2013 U.S. Dist. LEXIS 96173 (W.D.N.C.
May 14, 2013)....................................................................................16

*Oates v. Trs. of Gaston College*,
 No. 3:12-CV-853-RJC-DCK, 2013 U.S. Dist. LEXIS 96177 (W.D.N.C.
 July 10, 2013) ....................................................................................15, 16

*Peterson v. Cooley*,
 142 F.3d 181 (4th Cir. 1998) ...............................................................10

*Progressive Septic, Inc. v. SeptiTech, LLC*,
 No. 09-03446, 2011 WL 939022 (D. Md. Mar. 15, 2011) ...............................18

*Pyramid Brokerage Co., Inc. v. Citibank (N.Y. State), N.A.*,
 145 A.D.2d 912 (N.Y. App. Div. 1988) ...........................................12

*Reed v. Reed*,
 169 A. 798 (Md. 1934) ...........................................................10

*Sensormatic Security Corp. v. Sensormatic Electronics Corp.*,
 249 F. Supp. 2d 703 (D. Md. 2003)...................................................14

*Ultrasound Imaging Corp. v. Am. Soc'y of Breast Surgeons*,
 358 F. Supp. 2d 475 (D. Md. 2005)...........................................8, 10

*Wag More Dogs, LLC v. Cozart*,
 680 F.3d 359 (4th Cir. 2012) ...............................................7, 8

STATUTES

28 U.S.C. § 1291 (1982) ...........................................................1

28 U.S.C. § 1332(a) (2011)...........................................................1

OTHER AUTHORITIES

25 Samuel Williston & Richard A. Lord, *A Treatise on the Law of Contracts*
 § 67:102 (4th ed. 2012)...........................................................10

Fed. R. Civ. P. 12(b)(6)...........................................................2, 20

Fed. R. Civ. P. 15(a)(1)...........................................................20

Fed. R. Civ. P. 15(a)(2)...........................................................20

## JURISDICTIONAL STATEMENT

The United States District Court for the District of Maryland had proper subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) (2011), because the parties are citizens of different states and the amount in controversy exceeds $75,000.  This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291 (1982) because the District Court issued a final judgment dismissing all counts of the Complaint, with prejudice, on July 8, 2013.  Appellants timely appealed on August 1, 2013.

## STATEMENT OF ISSUES

Appellant Discovery Communications, LLC ("Discovery") appeals the District Court's dismissal of its Complaint against Computer Sciences Corporation ("CSC") for tortious interference with contract.  The appeal presents two issues for review:

1)    Did Discovery's Complaint allege sufficient facts to state a claim for tortious interference with contract under Maryland law?

2)    Did the District Court abuse its discretion when it did not offer Discovery, *sua sponte*, the chance to amend its Complaint?

## STATEMENT OF THE CASE

On September 28, 2012, Discovery filed a complaint against CSC, alleging that CSC tortiously interfered with an Employment Agreement between Discovery

and Thomas R. Colan by "employing Mr. Colan, despite knowledge of the [Agreement]." JA-9 ¶ 29. On October 29, 2012, CSC moved to dismiss the Complaint in its entirety, pursuant to Federal Rule of Civil Procedure 12(b)(6). JA-54. The District Court granted CSC's motion on July 8, 2013, holding that Discovery failed to state a claim for tortious interference because 1) Discovery did not allege that CSC knew of the Employment Agreement when it offered Mr. Colan a job, and 2) the only interference alleged in the Complaint—CSC's employment of Mr. Colan—took place after his Employment Agreement with Discovery had ended. JA 67-70. Discovery now appeals the District Court's well-reasoned decision.

## STATEMENT OF FACTS

### I.     The Employment Agreement Between Mr. Colan and Discovery

On February 8, 2008, Discovery and Mr. Colan entered into an Employment Agreement ("Agreement") for a term ending on March 16, 2011. JA-5 ¶ 7.[1] Under the terms of this Agreement, Mr. Colan agreed to serve as Discovery's Executive Vice President, Chief Accounting Officer. *Id.* ¶ 6. Discovery and Mr. Colan amended the Agreement twice thereafter. *Id.* The second and final amendment extended the term of the Agreement to March 16, 2013. JA-5 ¶ 7.

---

[1] CSC takes the facts as alleged by Discovery in its Complaint as true for purposes of this appeal only. *See, e.g.*, *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

- 2 -

Mr. Colan had the right to terminate the Agreement in two ways.  First, under Section IV(D)(1a), Mr. Colan could terminate the Agreement for "Good Reason" if Discovery failed to fulfill certain obligations.  JA-15.  Terminating the Agreement for "Good Reason" entitled Mr. Colan to certain enumerated benefits.  JA-16-17 § IV(D)(2)-(4).

Second, under Section IV(D)(5), Mr. Colan could terminate the Agreement before the expiration of his Term of Employment for a reason other than a "Good Reason" or "Change in Control."  JA-17.  Such early termination, without "Good Reason," would constitute material breach and result in Mr. Colan "forfeit[ing] all right and obligations to be compensated for any remaining portion of his annualized base salary, Severance Payment, bonus/incentive payment" and other compensation that "may otherwise be due under [the] Agreement."  *Id.* § IV(D)(5).  In addition, under Section VI(A) of the Agreement, if Mr. Colan terminated his employment with Discovery under Section IV(D)(5), he agreed "for a period of twelve (12) months after the conclusion of [his] employment with the Company . . . not [to] work for or engage in any activities on behalf of any company or any entity that provides television programming services for distribution to cable, satellite and/or other multi-channel distribution platforms . . . ."  JA-19.[2]

---

[2] Because CSC is not an "entity that provides television programming services for distribution to cable, satellite and/or other multi-channel distribution

## II.    August 17, 2012 – August 23, 2012

On August 17, 2012, Mr. Colan notified Discovery that he was terminating his Employment Agreement, effective August 30, 2012.  JA-39.  Although he declined to name his new employer, he indicated that he had been "contacted about an opportunity in the area" and had subsequently accepted a job offer.  *Id.*

On August 21, 2012, Mr. Colan met with Discovery's Senior Executive Vice President for Human Resources and Discovery's Chief Financial Officer.  JA-7 ¶ 14.  Each executive told him that Discovery would not release Mr. Colan from his Employment Agreement.  *Id.*

On August 23, 2012, Mr. Colan "informed Discovery that he intended to move forward with accepting employment elsewhere."  JA-7 ¶ 15.  That day, Discovery sent a letter to Mr. Colan, informing him that the company "fully expect[ed]" that he would "comply with the obligations of the agreement, including the fixed-term that [was] not scheduled to expire until March 16, 2013."  JA-41.

Also on August 23, 2012, Discovery learned from a Form 8-K filed with the U.S. Securities and Exchange Commission that CSC had offered Mr. Colan a position as its Vice President, Controller, and Principal Accounting Officer.  JA-7 ¶ 16.

---

platforms," it is not disputed that this provision is inapplicable to the disposition of this appeal.

### III.    August 24, 2012 – August 30, 2012

Upon learning that Colan was hired by CSC, Discovery's counsel wrote to CSC on August 24, 2012, stating that Mr. Colan was party to an employment agreement with Discovery that did not expire until March 2013. JA-48. Discovery's Complaint did not allege that CSC knew of the Agreement prior to receiving this letter.

On August 27, 2012, Discovery sent a second letter to Mr. Colan, copying CSC, which reiterated that Discovery did not accept Mr. Colan's resignation. JA-50. Discovery explained that Mr. Colan's "resignation, as of August 30, 2012," constituted a material breach under Section IV(D)(5) of the Agreement. *Id.*

CSC did not respond to Discovery's August 24 or August 27 letters. JA-8 ¶¶ 19, 21. In addition, the Complaint contained no allegation that CSC interacted with Mr. Colan in any manner between August 24 and August 30. Mr. Colan's last day working at Discovery was August 30, 2012. JA-39.

### IV.    August 31, 2012

On August 31, 2012, Mr. Colan began employment with CSC. JA-8 ¶ 22.

## SUMMARY OF THE ARGUMENT

Even taking the allegations of the Complaint as true, Discovery has not alleged that CSC took any action that can form the basis of a tortious interference claim. The Complaint asserted only one claim: that CSC committed interference "[b]y employing Mr. Colan" on August 31. JA-6 ¶ 29. The District Court correctly found that this claim failed because no contract existed between Discovery and Mr. Colan on that date.

This Court's inquiry should end there. However, in an attempt to fix the unfixable, Discovery introduced novel theories of tortious interference in its briefing before this Court and the District Court. None of these arguments flow from the allegations contained in Discovery's Complaint or have any basis under Maryland law.

Specifically, the allegations of the Complaint fall into three time periods: (1) the period prior to August 24, when a valid contract existed between Discovery and Mr. Colan, but Discovery did not plead that CSC had any knowledge of that contract; (2) the period between August 24 and August 30, when a valid contract existed between Discovery and Mr. Colan and CSC had knowledge of that contract, but Discovery did not plead that CSC took any action to interfere with it; and (3) August 31 to present, when no valid agreement existed between Discovery and Mr. Colan. A cognizable claim for tortious interference can lie only during the second

time period, when both a valid contract existed and CSC had knowledge of that contract. Discovery's Complaint, however, did not allege that CSC took any actions whatsoever between August 24 and August 30.

This Court should not assume that this omission was an accident: Discovery had the unfettered right to amend its Complaint in response to CSC's motion to dismiss, and it did not. Because Discovery did not plead sufficient facts to state a claim for tortious interference with contract, the judgment of the District Court, dismissing the Complaint with prejudice, should be affirmed.

## **ARGUMENT**

### I. **Standard of Review**

This Court reviews *de novo* a district court's grant of a motion to dismiss, accepting as true the facts alleged in the complaint. *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 364-65 (4th Cir. 2012). "To survive a motion to dismiss, a plaintiff must establish 'facial plausibility' by pleading 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* at 365 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)). Although the Court is "constrained to take the facts in the light most favorable to the plaintiff," it "need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." 680 F.3d at 365 (citations & quotation marks omitted). "At bottom, a plaintiff must 'nudge[] [its]

claims across the line from conceivable to plausible' to resist dismissal." *Id.*
(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## II. The District Court Properly Determined That Discovery Failed To State a Claim for Tortious Interference Under Maryland Law

To make out a claim for tortious interference with contract, Discovery must
allege (1) the existence of a contract between Discovery and Mr. Colan, (2) CSC's
knowledge of that contract, (3) CSC's intentional interference with the contract, (4)
breach of the contract by Mr. Colan, and (5) resulting damage to Discovery. *See
Ultrasound Imaging Corp. v. Am. Soc'y of Breast Surgeons*, 358 F. Supp. 2d 475,
479 (D. Md. 2005). Discovery argues that it has sufficiently pled each of these
elements. (Brief of Appellant 12-25, ECF No. 11 "Discovery Br.") But Discovery
cannot make its case in piecemeal fashion. Discovery's Complaint did not allege
that CSC took any impermissible action when <u>both</u> a valid Employment
Agreement existed <u>and</u> CSC had knowledge of it. As a result, Discovery failed to
state a claim for tortious interference under Maryland law.

### A. Discovery Did Not Plead Facts Showing That a Valid Contract Existed When Mr. Colan Began Working at CSC

Discovery's Complaint alleged that "*[b]y employing* Mr. Colan, despite
knowledge of the Employment Agreement between Mr. Colan and Discovery,
CSC intentionally induced Mr. Colan to breach the Employment Agreement." JA-
9 ¶ 29 (emphasis added). By its plain language, Discovery based its lawsuit solely

- 8 -

on CSC's employment of Mr. Colan on August 31, and nothing else. Discovery maintains this position on appeal, arguing that CSC committed tortious interference when it "knowingly hired and employed Mr. Colan before the expiration of his Agreement on March 16, 2013." Discovery Br. 20.

Discovery's argument fails. By providing notice to Discovery on August 17, 2013 that he was resigning from his position, Mr. Colan terminated his Agreement with Discovery on August 30. Therefore, when Mr. Colan began working for CSC on August 31, no valid agreement existed between Discovery and Mr. Colan with which CSC could interfere.

Discovery conveniently ignores this inevitable conclusion, maintaining that Mr. Colan was contractually obligated to "work exclusively for Discovery until March 16, 2013." Discovery Br. 22-23.[3] This stance is contrary to both the terms of the Agreement and the principles of contract law. First, the Agreement clearly contemplates that Mr. Colan could unilaterally terminate the Agreement by resignation. JA-17 § IV(D)(5) (specifying penalties if the "Executive terminates this Agreement before the Term of Employment has expired"). Thus, Discovery

---

[3] The Complaint also alleged that CSC intentionally induced Mr. Colan to breach his Employment Agreement "knowing that Mr. Colan had been provided an opportunity by Discovery to cure the material breach, and while that cure period was pending." JA-9 ¶¶ 29-30. The District Court held that "the cure that Discovery offered had no effect on the termination of the contract," which occurred August 30, 2013. JA-70. Discovery does not challenge this conclusion on appeal.

specifically contemplated the possibility that Mr. Colan would elect not to work for Discovery through the end of the term.

Second, Discovery's argument relies on the absurd conclusion that an employer can force an employee against his will to complete a contract for personal services. This position contravenes the principles of basic contract law, under which courts disfavor specific performance of employment contracts. *See* 25 Samuel Williston & Richard A. Lord, *A Treatise on the Law of Contracts* § 67:102 (4th ed. 2012) (explaining that a promise to fulfill an employment contract is "generally not enforceable by affirmative decree"); *Reed v. Reed*, 169 A. 798, 799 (Md. 1934) (lack of mutuality prohibited specific performance of any terms of a contract because the plaintiff, who agreed to work for defendant's company in exchange for a stock transfer, could not be compelled to perform).

In sum, Mr. Colan terminated the Agreement on August 30, 2013, after he provided notice to Discovery, on August 17, 2012, that he would resign on that date. It is therefore axiomatic that CSC's employment of Mr. Colan on August 31 cannot constitute interference with the contract because there was no valid contract with which to interfere. *See Peterson v. Cooley*, 142 F.3d 181, 186-87 (4th Cir. 1998) (no tortious interference absent valid contract); *Ultrasound Imaging Corp.*, 358 F. Supp. 2d at 480 (same).

Discovery further argues that "the act of engaging someone, or, alternatively, continuing to engage someone as an employee . . . is sufficient to support a tortious interference claim," even if the defendant did not induce the employee to quit his job. Discovery Br. 20-21. The cases Discovery cites in support of this proposition, however, involve restrictive covenants that expressly survive termination of the employment relationship, not allegations of interference with term-of-years employment contracts. *See* Discovery Br. 20-23 (citing *Fowler v. Printers II, Inc.*, 598 A.2d 794 (Md. Ct. Spec. App. 1991); *Magic Valley Truck Brokers, Inc. v. Meyer*, 982 P.2d 945 (Idaho 1999)). Indeed, the *Magic Valley* court specifically made that distinction, stating: "[T]he district court did not find that Continental interfered with Magic Valley's employment of Meyer but, rather, that it interfered with Meyer's performance of the covenant not to compete." *See Magic Valley*, 982 P.2d at 950.

As set forth above, unlike the noncompetition agreements in *Fowler* and *Magic Valley*, which were prospective covenants that survived termination of employment, Mr. Colan's obligation to work exclusively for Discovery was extinguished upon his resignation and termination of the Employment Agreement.[4] The acts constituting breach in *Fowler* and *Magic Valley* were the employees' performance of work in competition with their former employers. *See Fowler*, 598

---

[4] As stated previously, while there was a restrictive covenant in the Employment Agreement, Discovery has not alleged that it is applicable here.

A.2d at 804; *Magic Valley*, 982 P.2d at 951.  Because the defendants in those cases knowingly engaged the breaching employees to perform work that violated the employees' prospective restrictive covenants, they were found liable for tortious interference.

In stark contrast, Discovery's Complaint does not allege that CSC engaged in a single tortious act—even upon information and belief —between August 24, 2012, when Discovery put CSC on notice of the Employment Agreement, and August 30, 2012, the date on which the Employment Agreement was terminated. Rather, as clearly spelled out in the Complaint, the allegation is that CSC tortiously interfered with the Employment Agreement "*[b]y employing* Mr. Colan."  JA-9 ¶ 29 (emphasis added). [5]   Simply put, it is illogical to conclude that CSC's *employment* of Mr. Colan on August 31, 2013, could have caused the *breach* which occurred on August 30, 2013.  *See Pyramid Brokerage Co., Inc. v. Citibank (N.Y. State), N.A.*, 145 A.D.2d 912, 913 (N.Y. App. Div. 1988) (defendant not liable for tortious interference because it did not take any action until after alleged contract was repudiated).

---

[5] *See also* JA-50 (letter from Discovery giving Mr. Colan the "opportunity to cure the breach that [his] *resignation . . . would cause*") (emphasis added).

B.      Discovery Did Not Plead Facts Showing That CSC Had Knowledge
of Mr. Colan's Contract When It Offered Him a Job

As explained above, Discovery's Complaint alleged only that CSC tortiously

interfered with the Agreement by employing Mr. Colan on August 31, 2012, after

the contract had been terminated.  Discovery has argued in briefing to this Court

and the District Court, however, that CSC tortiously interfered with the Agreement

when it offered Mr. Colan a job on or before August 17, 2012.  *See, e.g.*, Discovery

Br. 1.  This argument should be rejected out of hand because the Complaint

contained no allegation that CSC had knowledge of Mr. Colan's Employment

Agreement before Discovery formally notified it by letter on August 24, 2012.  JA-

7-8 ¶¶ 17-18.  Because knowledge of the Agreement prior to any act that might

induce its breach is an essential element of a tortious interference claim, Discovery

did not plead facts sufficient for this Court to conclude that it is plausibly entitled

to relief.

Discovery contends that it sufficiently alleged that CSC knew about the

Agreement when it made its job offer, pointing to its assertion that "CSC was and

is aware of the existence of the Employment Agreement."  JA-9 ¶ 28.  As the

District Court pointed out, this allegation neither requires an inference that CSC

was aware of the Agreement before August 17 nor provides support for another

central element of Discovery's claim—that CSC knew that the Agreement bound

Mr. Colan to provide exclusive services to Discovery for a term of years.  JA-67

- 13 -

(citing *Pitcock v. Kasowitz, Benson, Torres & Friedman, LLP*, 915 N.Y.S.2d 239, 241 (N.Y. App. Div. 2011)).

Discovery attempts to bolster its contention to the contrary by citing to *CompuSpa, Inc. v. IBM Corp.*, 228 F. Supp. 2d 613 (D. Md. 2002), and *Sensormatic Security Corp. v. Sensormatic Electronics Corp.*, 249 F. Supp. 2d 703, 710 (D. Md. 2003)). Discovery Br. 14-15. Notably, both of these cases have limited relevance because they were decided before the Supreme Court heightened pleading standards in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Moreover, both *CompuSpa* and *Sensormatic* are distinguishable from this case. As the District Court noted, *Sensormatic* relied in part on a provision in the contract between the allegedly interfering party and the breaching party that, by its terms, acknowledged the possible existence of the contract that was breached. Thus, the *Sensormatic* court opined that there was implied knowledge of the contract with which the defendant allegedly interfered. JA-68. And in *CompuSpa*, the court found that the defendant's knowledge of the contract was "implicit" in the complaint's allegations because the assertion that defendant acted for the purpose of causing a breach did not "make any sense" absent this inference. 228 F. Supp. 2d at 624.

- 14 -

A careful reading of Discovery's Complaint actually forecloses any reasonable inference that CSC had knowledge of the Agreement prior to August 24, 2012. The only allegation of a tortious act occurs in Paragraph 29 of Discovery's Complaint, which reads as follows: "29. By employing Mr. Colan, despite knowledge of the Employment Agreement, CSC intentionally induced Mr. Colan to breach the Employment Agreement." JA-9. The next paragraph is telling: "30. CSC did so knowing that Mr. Colan had been provided an opportunity by Discovery to cure the material breach, and while the cure period was pending." *Id.*

Here, Discovery's Complaint points only to CSC's act of employing Mr. Colan as intentionally inducing breach, and it highlights that the period during which CSC obtained such knowledge was after Discovery copied CSC on the August 27, 2012 letter to Colan granting the cure period. As a result, one cannot reasonably conclude that this language gives rise to any inference that CSC had knowledge of the Agreement when it offered Mr. Colan a job on or before August 17, 2012.

Mindful of the new standard for pleading after *Twombly* and *Iqbal*, Discovery also cites *Oates v. Trustees of Gaston College*, No. 3:12-CV-853-RJC-DCK, 2013 U.S. Dist. LEXIS 96177 (W.D.N.C. July 10, 2013), for the proposition that a tortious interference claim can survive a motion to dismiss simply by

alleging that the interfering party "had knowledge of Plaintiff's employment contract." *Id.* at \*9-10. In seeking dismissal of the claim in *Oates*, however, the defendants never argued that the complaint failed to allege their knowledge of the employment contract. Instead, the *Oates* defendants sought dismissal on the grounds that there was no breach because the contract had been fully performed. *See Oates v. Trs. of Gaston Coll.*, No. 3:12-CV-853-RJC-DCK, 2013 U.S. Dist. LEXIS 96173, at \*16 (W.D.N.C. May 14, 2013) (Mag. Judge's Mem. & Recommendation). Thus, the *Oates* court's denial of the motion was on different grounds than the argument Discovery attempts to advance here.

Finally, Discovery argues that under the "facial plausibility" standard described in *Iqbal*, it was "not required to plead all evidentiary facts in support of its allegation that CSC had knowledge of the Agreement." Discovery Br. 15 n.4. CSC is not claiming that Discovery must have forecast evidence sufficient to prove the knowledge element of its tortious interference claim, however. Discovery's Complaint is insufficient because it failed to allege any facts—even upon information and belief—sufficient to state that CSC knew, at the time it offered him a job, that Mr. Colan was contractually restricted from leaving employment with Discovery. *See Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002) ("[W]e do not affirm here because [plaintiffs] failed to forecast evidence sufficient to prove an element of an ordinary negligence claim . . . but because [plaintiffs]

have failed to allege facts sufficient to state elements of such a claim.") (emphasis omitted).   Accordingly, CSC's job offer cannot form the basis of Discovery's claim for tortious interference.

       C.       Discovery Did Not Plead Facts Supporting Its Theory That CSC Interfered with the Employment Agreement After Receiving Notice, and Before the Agreement's Termination

Discovery argues that "CSC's knowledge of the Agreement at any time before [Mr. Colan] joined CSC" is sufficient to establish a claim for tortious interference.   Discovery Br. 18.   To sustain this implausible position, Discovery asks this Court either to draw unwarranted inferences from its Complaint or, quite simply, to create new law.   Neither of these courses is appropriate.

First, Discovery contends that, based solely on its allegations that (1) it notified CSC of the Agreement on August 24 and (2) CSC employed Mr. Colan on August 31, the Court should infer that "between August 24 and August 31, 2012, [CSC] took steps to encourage Mr. Colan to leave Discovery." *Id.*   In essence, Discovery is asking this Court to use its imagination to fill in the gaps of its Complaint.   This type of speculation is not the sort of "reasonable inference" that *Iqbal* and *Twombly* allow courts to draw.   *See Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.") (citation & quotation marks omitted).   If Discovery's reasonable pre-filing inquiry

revealed that CSC took steps to encourage Mr. Colan to quit between August 24 and 30, Discovery would have made such an allegation, even if only "upon information and belief." Discovery's failure to do so was fatal to its claim.

Second, Discovery asserts that CSC committed an act of tortious interference by "continu[ing] to offer lucrative employment to Mr. Colan with knowledge of the Agreement." Discovery Br. 18; *see also id.* 19 (arguing CSC induced breach by "making *and maintaining*" an offer) (emphasis added). Discovery's contention appears to be that, after it informed CSC on August 24 that Mr. Colan had an Employment Agreement for a term of years, CSC had an affirmative obligation to withdraw the job offer that Mr. Colan accepted on or before August 17, 2012. *See* JA-39.

As an initial matter, Discovery did not clearly articulate this argument before the District Court and may not raise the theory for the first time on appeal. *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 394 n.6 (4th Cir. 2011) ("In the normal course, we do not consider issues raised for the first time on appeal . . . .").

Notwithstanding this waiver, Discovery has not cited a single case in support of its assertion that a party's inaction, by declining to withdraw a previously-extended job offer, can constitute tortious interference. Moreover, the facts alleged in the Complaint cannot give rise to a reasonable inference that CSC, by its inaction, caused Mr. Colan to breach. *See Progressive Septic, Inc. v. SeptiTech,*

- 18 -

*LLC*, No. 09-03446, 2011 WL 939022, at *17 (D. Md. Mar. 15, 2011) (quoting *Macklin v. Robert Logan Assocs.*, 639 A.2d 112, 119 (Md. 1994)) (tortious interference requires "showing that the defendant intentionally induced the breach or termination of the contract"). Taking Discovery's allegations as true, by the time CSC had notice of the Agreement on August 24, it had offered Mr. Colan a job, Mr. Colan had accepted that job, Mr. Colan had submitted his resignation letter, and Mr. Colan had verbally reiterated his intention to leave his employment with Discovery. In these circumstances, the job offer—which Discovery does not allege was made with knowledge of the Agreement—is the action that caused Mr. Colan's breach. The fact that Mr. Colan gave two weeks' notice of his intent before terminating the Agreement does not change this result. In sum, under even the most favorable reading of its Complaint, Discovery has failed to state a claim for tortious interference with contract.

## III. The District Court Did Not Abuse Its Discretion By Declining To Invite Discovery To Amend Its Complaint

As the District Court observed, Discovery never moved for leave to amend its complaint. JA-70. Accordingly, it is foreclosed from arguing on appeal that the district court improperly denied leave to amend. *See Domino Sugar Corp. v. Sugar Workers Local Union 392, UFCW*, 10 F.3d 1064, 1068 n.1 (4th Cir. 1993); *Cozzarelli v. Inspire Pharm. Inc.*, 549 F.3d 618, 630-31 (4th Cir. 2008) ("[W]e

cannot say that the district court abused its discretion by declining to grant a motion [to amend] that was never properly made.") (citation omitted).

In *Domino Sugar*, for example, this Court rejected an appellant's contention that "the district court erred by not providing [it] leave to amend its complaint in response to the [defendant's] motion to dismiss." 10 F.3d at 1068 n.1. The court explained:

> [Appellant's] argument fails . . . because the Company never requested leave to amend. Moreover, the Company did not need leave from the district court to amend its complaint. This court recognizes that, under Fed. R. Civ. P. 15(a), a complaint may be amended without leave of the court when the defendant has not filed a responsive pleading. A motion to dismiss is not a responsive pleading for the purposes of Rule 15(a).[6] Thus, the Union's motion to dismiss did not preclude the Company from amending its complaint without leave of court.

*Id.* (internal citations omitted).

Here, Discovery had the opportunity, as of right, to amend its Complaint in the District Court. Instead, it chose to assert new allegations and draw unwarranted inferences in its briefing papers. Discovery cannot now contend that

---

[6] In 2009, Rule 15(a)(1) was amended to provide that service of a responsive pleading no longer terminates a party's right to amend as a matter of course. Pursuant to this amendment, the right to amend now terminates 21 days after service of a motion under Rule 12(b). After that point, a party must request opposing counsel's consent or leave of the court to amend its pleading. Fed. R. Civ. P. 15(a)(2). Discovery did neither.

the district court erred when it did not affirmatively offer the company a chance to amend, particularly where no such offer was required.[7]

## **CONCLUSION**

For the foregoing reasons, the judgment of the District Court, dismissing the Complaint with prejudice, should be affirmed.

## **REQUEST FOR ORAL ARGUMENT**

Appellee respectfully requests oral argument in connection with this appeal.

Respectfully submitted,

November 18, 2013          ____/s/ M. Carter DeLorme_____
M. Carter DeLorme
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Telephone:  (202) 879- 4643
Facsimile:   (202) 626-1700
cdelorme@jonesday.com

*Counsel for Defendant-Appellee*

---

[7] The only appellate case that Discovery cites in support of its argument that this Court should grant it leave to amend contains nothing more than this Court's admonition to a district court, following reversal of its dismissal of a complaint, that the court should, in the future, grant leave to permit amendments that might clear up other asserted pleading defects. *Gerner v. Cnty. of Chesterfield, Va.*, 674 F.3d 264, 267 n.3 (4th Cir. 2012). Discovery cites to no authority in support of its contention that the District Court had an obligation to offer it the chance to amend its Complaint.

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because this brief contains 4,736 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2007 in 14 point font in Times New Roman.

Respectfully submitted,

November 18, 2013                    /s/ M. Carter DeLorme
                                     M. Carter DeLorme
                                     JONES DAY
                                     51 Louisiana Avenue, N.W.
                                     Washington, D.C. 20001
                                     Telephone:  (202) 879- 4643
                                     Facsimile:   (202) 626-1700
                                     cdelorme@jonesday.com

                                     *Counsel for Defendant-Appellee*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify on this 18th day of November, 2013, I electronically filed with the Clerk's Office of the United States Court of Appeals for the Fourth Circuit the foregoing Response Brief of Appellee Computer Sciences Corporation, using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF user:

Christine Nicolaides Kearns
Pillsbury Winthrop Shaw Pittman LLP
2300 N Street, N.W.
Washington, D.C. 20037
Telephone: (202) 663-8000
Facsimile:   (202) 663-80007
christine.kearns@pillsburylaw.com

*Counsel for Plaintiff-Appellant Discovery Communications, LLC*

I further certify that on this 18th day of November, 2013, I sent to the Clerk's Office of the United States Court of Appeals for the Fourth Circuit eight copies of the Response Brief of Appellee Computer Sciences Corporation via overnight UPS delivery.

November 18, 2013                    ____/s/ M. Carter DeLorme_____
                                     M. Carter DeLorme

                                     *Counsel for Defendant-Appellee*